We have cease-of-court. I'm Karen Landau and I represent Mohammad Ahmed Khan, with me in counsel's office is Zahar, who represents Mohammad Nawaz Khan, who is his father. I have a son. So, the question in this case is pretty straightforward. It's whether there's enough evidence to support the district court's finding of laws. And the district courts refuse to hold an evidentiary hearing, even though we don't have any real method. We're not really sure what the method is that the government used. We know they used intended laws, which is appropriate, but we don't know, we just don't have enough facts to really be able to tell. One of the primary things I would point to as problematic are that the investigator, in her affidavit, she explained that she attempted to, that she took a period of 2010 to 2012, she found 10% of claims that appeared to be linked to actual employees, and then there were 20% that she couldn't make any conclusion about. And so, based on that, they concluded that the, essentially, what appears to be all the claims that you find were actual laws. The defendants objected and they said, no, this overstates the estimate, this overstates the appropriate laws. I'm saying actual laws, but really we're talking about intended laws and what we're talking about. Do you have an understanding of the difference between how the government is using intended laws and actual laws here, what they mean by intended laws? I don't, although I would assume, and this may be wrong, but my assumption is that by intended laws, they mean claims made. Because, you know, we know that the actual laws, I would assume that actual laws, I'm sure Mr. Dolan will understand this, but my understanding of actual laws, because there is a figure for actual laws, is that those were the actual payments that were made to claimants who shouldn't have received them. Presumably shouldn't have received them. We don't know that all of them should have received them. And so, that's the, in regards to my client, I believe that's something like $5.9 million. And then the intended loss would be claims made. So, you're saying EDD didn't make all the payments or claims that were made to EDD. They stopped some of them, is that what you're saying? Well, many of the claims were submitted and they were refused. So, we know that that's in the record. But, nonetheless, under the guidelines, that would be included. Very tricky. I thought I heard you say that the court used intended loss. Yes. How do I know that? Because now we know because it says so in the presenters report. The court adopted the findings of the presenters report. But the presenters report said intended loss and actual loss. Right. But the presenters report also says that based on the sentencing recommendation, an intended loss of, I think, $13.9 million. And I'm talking about my client, Nawaz. I'm going to refer to them by their middle names because it's way too differentiating. Nawaz's loss was slightly greater. I would like to just turn to another point because I think it's critical to the question of whether there's enough facts in the record to support the estimated loss and, conversely, whether the court should have held an evidentiary hearing. So, the alleged fraud, the charged fraud, went on for many years, including when my client was a minor, but beginning in 1991, certainly from 1999 and up through 2012. But the only, if you look at the investigators of David, the only legitimate claims, the only claims that she referred to were for 2010 and 2012. So, if there's 20% that she doesn't know about for that period, then what about all the other years? And, you know, potentially even, I guess, you know, one thing I would point out is, yes, it potentially really has to be a reasonable estimate, but you have to have a sufficient factual basis for that estimate. And one way to account for it, if you have a, if you don't really know or you have a margin of error, is you need discount, and there's no discount. So, if you don't know about 20%, then at a minimum, it should have been a 20% or 30% discount for legitimate claims. You also made a Rule 32 argument. In your briefs that you haven't mentioned enough, I think that's vague. If we agree with you about the Rule 32 argument, do we need to reach these other arguments? No, because you can remand for further findings. I do think it would be helpful to make a statement on an evidentiary hearing, because otherwise we could wind up right back here. And I think given the complexity of this case, this is a case where we really needed an evidentiary hearing. And, you know, one of the things with the larger one is... In terms of evidentiary hearing, what would you intend, or is, affirmatively? I mean, it seems to me, reading your briefs, it seems to me you don't have enough information to make a challenge, so you put on your proof, you'll have just cross-examination, is that it? Well, you are left with cross-examination, but cross-examination, yes. I think, first of all, the government needs to show more. That's the first point. And that could happen in an evidentiary hearing. And first of all, with your idea, right, I'm a little bit confused by this. It seems like you walked us in, you know, and haven't given enough evidence, so giving them a chance to do more evidence seems like it's maybe not in your interest. Maybe, maybe not, because we don't know what there is. Maybe they're not going to be able to make the showing. Maybe... Is it fair to say that as you stand here today, you don't have evidence that you would put on an evidentiary hearing, affirmatively? I don't. I mean, I didn't know. No, I do not. But I think we, as I said, we have the objections. And I forgot to say, I would like to reserve a couple minutes for rebuttal, but if there are no further questions, I'll reserve the rest of my time for rebuttal. Very good. Thank you. May it please the Court. My name is Jerry Dolan. I'm an assistant United States Attorney in Sacramento on behalf of the United States. I was also the counsel below this Court to affirm the judgment and sentence as to both there was none and none can. I'd like to start with answering a few of the Court's questions. The actual loss versus the limit loss issue that you brought up in judgment, that was the issue that wasn't really explored at the District Court because there was no objection. That's the part that I referred to where if that's really being raised for the first time in this Court, review should be for plenty error because it was clear to all the parties below what the difference was. Well, where was it clear? I couldn't figure out what the difference was. What is the definition of intended loss here? So, again, it was not explored because there was no objection made to this ambiguity. But I can represent to the Court that actual loss is the actual money paid out by ED. Intended loss is the total amount that would have been paid had a claim been completed. And so from time to time there were a number of claims that were obstructed that were caught and additional investigation was done. There's a tendency of the scheme. And so in those cases, the maximum benefit amount was not paid out to the individual claimant. So it wasn't the number of case, state case stubs that were sold to someone. It was actually the number of claims filed with ED based on what you thought were state case stubs. It was the total number of claims submitted to ED based on the wages from the subject companies and the total amount of benefits that would have been paid out. And is there somewhere in the record where we can tell that that's how intended loss was calculated? So the best the Court can do, and again, because there was no contemporary research, is looking for someplace on the record to find the information if there is no contemporary research. So the answer is sort of, which is why I started with the explanation, is sort of the answer. So, again, there was no contemporary research into the difference. But the government filed a sentencing memo on the subject of intended loss because there was challenge below as to whether actual versus intended should be used. Again, that's decided by the guidelines. And the government said that intended was appropriate because the constituents are cut from the front end of the explanation. Where was, I mean, intended could have been another thing. Like you said, the number of case stubs they sold to people that you could tell from their own records or something, instead of what was filed with the EKD. I mean, there are different ways you might calculate intended. Is there somewhere where I can look in the record and see that it is what you just said? Your Honor, I think the court, the best the court could probably do is include the declaration of Ms. Lopez, the summary charge, and then the pre-sentence report. I mean, I couldn't figure it out from Ms. Lopez's declaration. Maybe you can point me to where you think it is clear in her declaration. So... Ms. Lopez, did you have a question? I would actually like the court's right to the issue of intended losses and dismissal of the objection. I think it's more, it's stated in the pre-sentence report, but it's not explained because there was no objection. But what kind of objection was necessary? I mean, they were saying that the amount of loss is not supported here and not explained. I mean, why is it not enough to preserve an objection to the loss amount that the court relied upon? Your Honor, because I think counsel would attack to object and say we don't understand how intended loss is being defined by the government. But if what they say, we don't understand how it's being calculated and what the support for it is, I mean, that seems very similar. No, I think the objection below was, we don't agree with the government's accounting. We think this wasn't all fraud. They're saying it was. We don't quibble with the actual way they're calculating, or at least they did below. But we're quibbling with the fact that we only think it was 50% of fraud. They weren't saying, but then that number, therefore, is different. This just wasn't explored. I mean, this is why a error rule exists, because this is something that could easily be incurred. This is an issue where, again, there is evidence of fraud first being provided to the defense counsel about the issue of loss. This is something that was clearly explained to them below. Well, so even if we accept that the definition of intended loss is okay, how do you get over the fact that there was evidence, even from the government's witnesses, that some of the claims were valid? And it doesn't – I can't figure out any way that that was taken into account in any calculation. So I don't know that that's true. I mean, there's a difference between actual work being performed by the McConnells, which obviously happened, and there's evidence of that, and legitimate claims. And what the district court had to find is that the reasonable estimate of the loss, the European intended loss, exceeded $7 million. That was not where the government provided. It was $14 million. But the Lopez Declaration says that there are at least 12 legitimate claims. I disagree, Your Honor. The district court had said that there were 12 PEs from the bank accounts of McConnells that received unemployment benefits. But just because an individual was a PE from the account does not mean they were a legitimate claim. Indeed, one of those individuals, Jundu Garu, actually was convicted and ordered to pay a substantial amount of restitution. And I think at some point the McConnells simply decided to create a paper record so that they could have bank accounts that seemed to reflect the payments. But even so, if that's the number, if 70% was invalid, that far exceeds the $7 million that is applicable under the guidelines. And that's all the district court had to agree to. But doesn't the government have to at least put forward a calculation that shows it's worth, that says what you just said, that, okay, well, let's do 70% is invalid, and so that just is this number, and that's enough. I mean, I just don't see any kind of explanation of methodology anywhere. Well, I think the government had to support the PSR's finding that that $7 million was a reasonable estimate of a loss. And so rather than trying to piece together and go claim by claim, which could have been, under the summary of Investigator Lopez, surprised 400 claimants to reach the numbers that it did, I think the government could simply say, here's the evidence, and based on all of this, based on the evidence that's legitimate, where if those cash cards and pay stubs, none of those people received benefits at all. And based on the bank records, which, while not dispositive, suggested that 70% or more weren't legitimate payments, whatever the loss that was, it far exceeded $7 million. Any evidence that the defendants were going to present would never make up the $7 million difference. Are you asking us to assume the anthem as opposed to actually having evidence or the calculation to back it up? If you understand my question, I just feel like you're asking us to assume the amount of losses there, whereas we got summary charts that just give us bottom-line numbers with no explanation of how this amount was calculated. So, I think the answer to that is the court doesn't need to assume it. I mean, the whole sentencing is generally a relatively, I don't want to say a summary of losses, but at least the court is in the best position to assess the evidence needed given the defense estimate, which is look at the numbers they provided for MTK, for example. We estimate that 50% was fraud. I mean, even given that estimate, that's $5.8 million right there. It wasn't, given the government's confidence that 50% wasn't a good number, whether it's zero based on the punch cards or between 10% and 30% based on the bank records, even though that doesn't really address the issue, it wasn't too much further of a stretch for the district court to say, you know what, a reasonable estimate of the loss, given the gravity and the amount of records in this case and the investigation and the probation officer's findings, a reasonable estimate of the loss would exceed $7 million. I want to briefly address the court's issue as to Rule 32 findings. The district court complied with Rule 32. The district court overruled the defense objections and adopted the statements of material facts in the PSR. That's all that's required under Rule 32. This court reviews those rulings or reviews the ruling as to intended loss, but the court may not provide explanations in the court. The only thing that's required under Rule 32 is that the court's findings be expressed and not implied, and that's what was provided. And that's hard to do. Of course, the objections need to be addressed in one fashion or another. You would agree? Yes, Your Honor. So if they're not addressed in the PSR, the district court just adopts the PSR. Does that hurt? No, Your Honor. The district court is required to address the objections and either sustain or overrule. And the district court heard argument. It heard both sides. It factored exactly in on the complaint of the defense, which is at the common and evidentiary hearing, and the district court rejected them, found there was insufficient factual basis, given their inability to come up with anything they would have provided, and overruled the objections. And that's at ER pages 67 and ER page 45. Why did you oppose an evidentiary hearing? I mean, given all this, hearing it all today, we know that we don't have a clean record. Why did you oppose it? I'll see my taxes. All right. Can I answer the question? I'm processing the record why I opposed it. I'll get off the government. Given the amount of the loss, and it was so high, and given what it seemed like the government would have to put forward at an evidentiary hearing, based on what the defense argument was, that they apparently wanted to go claim by claim, it seemed that the difference between 7 million and 14 million, the loss amount in the PSR, and the loss amount that we had to meet at sentencing, was so vast that an evidentiary hearing would have just been a waste of time that wasn't necessary under the circumstances. I actually have one more. So our en banc decision, Ameline, or Ameline, says that court can't just rely on the factual statements in a PSR to resolve challenges to the PSR tax. How are you getting around Ameline with your argument that this was sufficiently liberal 32? So I think once there's a formal objection to the PSR, the government has to come forward and present evidence to overcome and to support the factual findings of the PSR. And I think that is what happened with the declaration of Ms. Lopez and all the executives attached to that declaration. I think giving, and that's where, if I come back to Chief Judge Thompson's question, given the gulf between the 7 million and the 14 million dollar figure, and given the estimate of the defense, which was pretty close to 7 million dollars anyway, the evidence that the government submitted was sufficient for the district court to consider the objection, consider the response, and make a ruling.  Thank you, Judge. Thank you, Your Honor. I'd like to address the issue of plain error first. The objections were made that they were sufficient. You know, I was referring to ER-175-76. But the other thing, another point, and this is not in this exhortation, but the Nawaz's attorney submitted an estimation of what he thought were the percentages of legitimate and illegitimate, and clearly raised that. Did he follow up with the declaration? Well, that I can't answer. I cannot answer that question. You know, they offered, you know, at his sentencing, they offered to put him under oath, and the judges rejected that. But I can't tell you I didn't represent him in the court below, and I actually don't represent him here, so I haven't found him. I'd like to discuss the issue of the 7 million dollar break points. There's a couple things to consider. First of all, even though at the time of sentencing, the 7 million dollars was the break point, a month later, less than a month later, two years later, the break point, the guidelines were amended, so the break point went to 9.5 million. So on payment, that would be the applicable law. That's really not, it doesn't affect this court's decision whether the district court abuse its discretion, but it's something to consider in terms of harmlessness. The second point is that, you know, the guidelines are important, the break point is important, but there is a difference, most reports, between a law that's at, right at the break point, plus that's twice the break point, and just happens to fall into the next category. It affects sentencing, and I think that's something, you know, that's one of the reasons we have requirements on Rule 32, especially now that the guidelines are advisory. I don't know what, Judge Inland might have imposed the same sentence, he might have imposed the same sentence anyway, but he might have also said, well, okay, this law sits right here. The other thing is, the closer you get to the break point, the more important the margin of error becomes. Oh, I see. Let's see. The thing that everyone is basically saying, look, everyone agreed that this was likely over the break point. Yeah, and I don't really, I don't get that for the record. Of course, I was on town council, and someone was, but if so, then why did they object? Why did they ask for an evidentiary hearing? And they consistently did. Both defendants asked for an evidentiary hearing. It was denied. Both defendants said, no, this is higher than the amount of plans. My plan was represented by retained council. I don't know. Maybe they could afford an expert. I don't know if the boss was represented by retained or appointed council. That could have been a factor. Sometimes, you know, that is a factor, and sometimes retained councils don't realize they can apply for CJA funds. I mean, this is all outside the record, but I'm trying to offer an explanation as to why that might be. Other questions? If the cases are going to be submitted for a decision?
judges: Thomas, Friedland, Carney